Robert B. **COLEMAN**, Plaintiff,

v.

Janet **RENO**, Defendant.

No. Civ.A. 98–1627(JR).

United States District Court, District of Columbia.

March 29, 2000.

Robert B. Coleman, Ontario, Canada, plaintiff pro se.

Stacy M. Ludwig, Assistant U.S. Attorney, Washington, DC, for defendant.

### MEMORANDUM OPINION

ROBERTSON, District Judge.

Plaintiff, a dual citizen of the United States and Canada[1] presently incarcerated in a Canadian prison, has filed a complaint *pro se* seeking an order directing the Defendant Attorney General to accept custody of him and to allow his return to this country pursuant to the Treaty Between the United States of America and Canada on the Execution of Penal Sentences, 30 UST 6263, T.I.A.S. 9552 (1977) (hereinafter, "Treaty"), and 18 U.S.C. § 4102(2). He also seeks monetary damages. [Dkt. # 1]. The Defendant has filed a motion to dismiss, Plaintiff has filed an opposition, and the Defendant has submitted a reply. On consideration of the memoranda of the parties, the files and records in this case, and the applicable law, the Defendant's motion will be granted.

Plaintiff alleges that he is serving a life sentence imposed by a Canadian court in 1988, for two counts of second degree murder, and is ineligible for parole for twenty years (Cpt.¶¶ 8, 9). In 1994, he applied for transfer to the United States under Article III of the Treaty between the United States and Canada on the Execution of Penal Sentences ("Treaty") (Cpt.¶ 10). His application was approved by the Solicitor General of Canada (Cpt.¶ 11). The Defendant Attorney General, however, refused to approve the transfer (Cpt.¶¶ 12, 13). After an inquiry by a Senator from Georgia, the Attorney General gave as reasons for the denial the apparent weakness of Plaintiff's ties to the United States, the seriousness of the offenses, and his apparent lack of rehabilitative potential (Cpt.¶¶ 14, 15). Plaintiff challenges factual bases of these reasons (Cpt.¶¶ 16–19) and seeks an order directing the Attorney General to approve his return.

 Defendant argues that the complaint should be dismissed because the Treaty does not provide a private right of action, and because the statute authorizing her to approve or disapprove individual transfers, 18 U.S.C. § 4100 *et seq.*, rests the decision in her unfettered discretion.

---

1. Plaintiff alleges that he was born in Georgia, and has provided a copy of his birth certificate. He served in the United States Navy and gave a residence in Iowa as his address on discharge. He has continued to pay United States income taxes since his incarceration in Canada, and has been approved for continued registration as a U.S. citizen. His former wife, with whom he maintains contact, his son and daughter in law, and three sisters live in the United States. On the other hand, his mother was born in Canada and apparently he lived in Canada for some time with his wife and child, and was living there at the time of the homicides for which he is serving a life sentence. *See generally* Complaint, Docket Number 1, and attached exhibits.

This Court does not write on a clean slate, but is bound by and constrained to agree with the several decisions that uphold the Defendant's position.

In *Bagguley v. Bush*, 953 F.2d 660 (D.C.Cir.1991), *cert. denied*, 503 U.S. 995, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992), the Court of Appeals for this Circuit held that the Convention on the Transfer of Sentenced Persons, ratified by the United States and the United Kingdom, and the Transfer of Offenders to and from Foreign Countries Act, 18 U.S.C. §§ 4100 et seq., do not provide a private right of action for a prisoner seeking consent of the Attorney General to a transfer. Moreover, the Court held, Section 4102(4) authorizes but does not require the Attorney General to issue regulations for the exercise of her discretion in ruling on transfer requests. Because neither the Convention nor the Act describe any "particularized standards or criteria" for the exercise of this discretion, there are no substantive limits on its exercise. *Bagguley*, 953 F.2d at 663, citing *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Moreover, the Court held, because the decision to approve or disapprove transfer is committed to the discretion of the Attorney General, her decision is not subject to review under the Administrative Procedure Act. 5 U.S.C. § 701(a)(2).

In reaching these conclusions, the Court followed the prior decision of the Court of Appeals for the Seventh Circuit in *Scalise v. Thornburgh*, 891 F.2d 640 (7th Cir. 1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1815, 108 L.Ed.2d 945 (1990). Analogous decisions have been reached by the Court of Appeals for the Tenth Circuit in *Marquez–Ramos v. Reno*, 69 F.3d 477 (10th Cir.1995), where a Mexican national in U.S. custody sought transfer to Mexican prison, and by another judge of this Court in, *Brancaccio v. Reno*, 964 F.Supp. 1 (D.D.C.1997), where a Canadian citizen in U.S. custody sought to be returned to Canada to serve his sentence. Finally, in *Marshall v. Reno*, 915 F.Supp. 426 (D.D.C.

1996), the Court rejected a post-incarceration civil damage suit filed by a Canadian citizen who had been refused transfer to Canada to serve his U.S. sentence. In all of these cases, the Attorney General was held to have unfettered discretion to approve or disapprove transfers. The principles remain the same, although different treaties were involved in some of these decisions.

Plaintiff attempts to distinguish *Bagguley*, *Scalise*, and *Marquez–Ramos* on their facts, arguing that the prisoners in those cases were not "model" prisoners, had not used their incarceration constructively, or did not meet the requirements for transfer set out in the particular treaty. These arguments, and Plaintiff's discussion of the factors favoring his transfer, go to the merits of the Attorney General's decision to refuse to accept him. The merits of that decision, however, are not subject to review by this Court. It follows, therefore, that Plaintiff cannot recover damages because the discretion was exercised to refuse his request for transfer. *Marshall v. Reno*, *supra*.

Accordingly, the Court concludes that Plaintiff's complaint fails to state a claim on which relief can be granted.